Jessee Travis **ROUSE**, Appellant,

v.

William **FOSTER**, Appellee.

No. 81–1762.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1982.

Decided March 1, 1982.

Bradley K. Buethe, Lincoln, Neb., court-appointed, for appellant.

Paul L. Douglas, Atty. Gen. of Neb., Melvin K. Kammerlohr, Asst. Atty. Gen., Lincoln, Neb., for appellee.

Before HENLEY, Circuit Judge, GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

HENLEY, Circuit Judge.

Jessee Travis Rouse, a Nebraska state prisoner serving a twenty year sentence for second degree murder, appeals the district court's denial of his petition for a writ of habeas corpus. We affirm.

On December 11, 1972 Rouse pleaded guilty to the charge of second degree murder. Before accepting the plea the trial court[1] questioned him concerning his understanding of the sentencing procedure.[2] Appellant indicated that he understood that as part of the plea agreement, each attorney would ask the court to fix the sentence at a certain limit; the agreements between defense counsel and the prosecutor were not binding on the court; the court did not participate in any aspect of the plea negotiations; and the court would consider the sentencing recommendations.

In the sentencing proceedings, which immediately followed, two letters exchanged between counsel concerning the plea agreement were placed in the record. One letter from defense counsel to the prosecuting attorney stated:

The understanding is that you would reduce the charges now against Travis Rouse to a second degree murder charge; that the Court would not give a sentence in excess of 20 years and would give Mr. Rouse credit thereon for the time he has spent since being arrested on these

charges. My understanding is that you would remain silent on the request on our part to the Court that the Court give 16 years on the bottom side.

In response to the trial court's inquiries, Rouse acknowledged that he had seen copies of the letters, they correctly stated the matters that his attorneys had discussed with him before the hearing during which he entered his plea of guilty, and he approved of the statements and arrangements made on his behalf. The court subsequently sentenced appellant to a term of not less than sixteen years nor more than twenty years imprisonment.

Following his conviction Rouse petitioned for post-conviction relief in the state court, which denied his petition. On appeal, the Supreme Court of Nebraska also rejected Rouse's challenge to his conviction. Thereafter, he sought habeas corpus relief in the federal district court and now appeals from the court's denial of his application for a writ.

Rouse raises two issues on appeal. He argues that both the guilty plea proceedings and the indeterminate sentence he received denied him due process and equal protection. We address each of these contentions in turn.

In attacking the guilty plea proceedings, Rouse argues that the trial court was required under the A.B.A. Standards Relating to Pleas of Guilty, adopted by the Supreme Court of Nebraska in *State v. Turner*, 186 Neb. 424, 183 N.W.2d 763, 765 (1971), to personally advise him of the statutory minimum and maximum sentences he could receive before accepting his plea and that the court's failure to do so rendered his plea involuntary and unknowing. Relying on cases in which the Supreme Court of Nebraska reversed or remanded for an evidentiary hearing on the question of voluntariness because the guilty plea proceedings fell short of the minimum requirements set

---

1. The Honorable Warren K. Urbom, Chief Judge, United States District Court for the District of Nebraska.

2. The court also advised him that during the time he had been in custody pending trial, the death penalty for first degree murder, with which he was originally charged, had been declared unconstitutional.

forth in the A.B.A. Standards, *e.g., State v. Curnyn*, 202 Neb. 135, 274 N.W.2d 157 (1979), appellant contends that the state court's refusal to remand for an evidentiary hearing in his case, *State v. Rouse*, 206 Neb. 371, 293 N.W.2d 83 (1980), deprived him of due process and equal protection.

 Because the disposition of appellant's claim rests on the voluntariness of his plea, we must examine this underlying question. To withstand a constitutional challenge a guilty plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970); *see Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969); *Thundershield v. Solem*, 565 F.2d 1018, 1021 (8th Cir. 1977), *cert. denied*, 435 U.S. 954, 98 S.Ct. 1585, 55 L.Ed.2d 805 (1978). Thus, a state court may not accept a guilty plea unless the defendant enters it voluntarily and with sufficient understanding of the charge and the likely consequences of his plea. *E.g., Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. en banc 1980); *Williams v. Missouri*, 640 F.2d 140, 143 (8th Cir.), *cert. denied*, 451 U.S. 990, 101 S.Ct. 2328, 68 L.Ed.2d 849 (1981). Although states must adhere to this standard, there is no constitutional requirement that the trial court employ a particular litany to validate a guilty plea. *See Frank v. Blackburn*, 646 F.2d at 882; *Todd v. Lockhart*, 490 F.2d 626, 628 (8th Cir. 1974); *State v. Lewis*, 192 Neb. 518, 222 N.W.2d 815, 818 (1974). Instead, when a prisoner alleges that a guilty plea proceeding in state court was constitutionally defective because he was not specifically informed of one of the consequences of his plea, that is, the possible sentence,[3] the issue is whether he was aware of the actual sentencing possibilities and, if not, whether accurate information would have made any difference in his decision to plead guilty. *See Hunter v. Fogg*, 616 F.2d 55, 58 (2d Cir. 1980); *cf. Schriever v. United States*, 553 F.2d 1152, 1154 (8th Cir. 1977) (federal district court's failure to question defendant concerning his awareness of the maximum penalty, as required by Rule 11 of the Federal Rules of Criminal Procedure, did not result in a complete miscarriage of justice since defendant was aware of the maximum possible sentence at the time he pleaded guilty).

 In the course of the proceedings, Rouse was questioned about his understanding of the consequences of a plea of guilty and about the voluntary nature of his tendered plea. He was advised that by pleading guilty he was giving up the right to jury trial and the right of confrontation. He was made to understand the nature of the charge. He understood that the death penalty for first degree murder had been declared unconstitutional. He understood and approved the plea bargain that had been made in his behalf; that all other charges including first degree murder would be dropped; that a maximum sentence of twenty years would be recommended by the state which would make no recommendation as to minimum sentence. In fact, he got exactly what he bargained for. In the circumstances, it is beyond belief that at some point counsel had not discussed with and explained to appellant the full range of sentencing available to the court and it is clear that at most the failure of the sentencing judge to state upon the record the full range of sentence is a mere technical default of no constitutional significance.

In sum, we hold that the district court did not err in concluding that appellant made a voluntary and intelligent choice in pleading guilty to second degree murder.

Rouse also argues that the indeterminate sentence of sixteen to twenty years that he received was illegal because Nebraska law precluded imposition of an indeterminate sentence for crimes for which the maximum sentence, by statute, was life imprisonment, *e.g.*, second degree murder. *See* Nebraska Rev.Stat. § 28–402; *id.* § 83–1,105(1) (Cum. Supp.1972). Again relying on cases in

---

**3.** We note that Rouse's only challenge to the guilty plea proceedings was based on the court's failure to advise him of the full range of sentence possibilities.

which the Supreme Court of Nebraska found that the trial court had erred by imposing an indeterminate sentence for second degree murder and consequently remanded for resentencing, *e.g., State v. Randall*, 208 Neb. 248, 302 N.W.2d 733 (1981), appellant contends that the state supreme court's affirmance of the denial of post-conviction relief, *see State v. Rouse*, 206 Neb. 371, 293 N.W.2d at 89 (defendant waived his right to contest the indeterminateness of his sentence by failing to raise it on direct appeal), denied him due process and equal protection.

In countering appellant's argument, the State initially notes that the court in *State v. Rouse*, 206 Neb. 371, 293 N.W.2d at 89, held that an indeterminate sentence imposed for a crime not authorized by statute is erroneous but not void. The State also points out that the court construed the sixteen to twenty year indeterminate sentence at issue here as "a definite sentence for 20 years." *Id.*

■ In an earlier decision, we noted that a state court is ordinarily accorded a large measure of discretion in interpreting its own laws. *See Niemann v. Parratt*, 596 F.2d 316, 318 (8th Cir. 1979). Here, the state supreme court interpreted the sixteen to twenty year sentence as a definite twenty year term. Additionally, *State v. Thompson*, 189 Neb. 115, 201 N.W.2d 204 (1972), provides that for purposes of eligibility for parole, the statutory minimum sentence of ten years will be applied in the absence of a court-imposed mandatory minimum. We conclude in these circumstances that there is no merit to appellant's claim that he is now prejudiced because he does not gain eligibility for parole until after sixteen years of imprisonment. Appellant is now serving a definite term of twenty years, and he will be eligible for parole when he has served the statutory minimum sentence of ten years for second degree murder.

In light of the foregoing, the judgment of the district court is affirmed.